IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RACOCO WILLIAMS,<br><br>*Plaintiff,*<br><br>v.<br><br>ESA MANAGEMENT LLC, *et al,*<br><br>*Defendants.* | Civil Action No. 2:19-cv-898<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Racoco Williams ("Williams") was convicted of six counts charged in a superseding indictment, including participating as a principal administrator in a criminal enterprise involving 150 kilograms or more of cocaine, after an eleven day jury trial in 2023 before United States District Judge Joy Flowers Conti.[1] On August 7, 2024, he was sentenced by

---

[1] Williams is a long-time drug dealer and money launderer originally from Jamaica. From at least 2012 through March 2018, he arranged for the transportation of millions of dollars of drug trafficking proceeds and hundreds of kilograms of cocaine and marijuana to and from various locations in the United States, including Arizona and Pennsylvania, using various modes of transportation, including airlines and vehicles, and through the mail. On August 27, 2019, a grand jury in this district returned a superseding indictment against Williams charging him with: Count I: possession with the intent to distribute 5 kilograms or more of cocaine on April 13, 2017, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii); Count II: possession with the intent to distribute 5 kilograms or more of cocaine on August 29, 2017, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii); Count III: conspiracy to distribute 5 kilograms or more of cocaine and a quantity of marijuana from 2012 to March 2018, in violation of 21 U.S.C. § 846; Count IV: participating in a continuing criminal enterprise as principal administrator that involves 150 kilograms or more of cocaine, from 2012 through March 2018, in violation of 21 U.S.C. § 848(b); Count V: conspiracy to commit money laundering from 2012 through August 2017, in violation of 18 U.S.C. § 1956(h); and Count VI: interstate travel or transmission in aid of racketeering from 2012 through August 2017, in violation of 18 U.S.C. § 1952(a)(3). (2:17-cr-00246-JFC-1, ECF Nos. 95-96). The Court takes judicial notice of Williams' criminal case proceedings. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts

1

Judge Conti to 360 months of imprisonment at each count of Counts 1 and 2; life imprisonment without release at Count 4; 240 months of imprisonment at Count 5; and 60 months of imprisonment at Count 6, all to be served concurrently. (2:17-cr-00246-JFC-1, ECF Nos. 95, 271, 337). Judge Conti explained of Williams' arrest:

> On August 29, 2017, Williams was arrested after police executed a search warrant at his hotel room located in the Extended Stay America Hotel in Monroeville, Pennsylvania, and seized (among other things) 17 kilograms of cocaine. The application and affidavit for the search warrant were signed by Brianna Maria Tetrault ("Tetrault"), a special agent with the Department of Homeland Security (ECF No. 303-1). The application stated that it was submitted in support of a warrant to search "for controlled substances, including marijuana." *Id.* The probable cause set forth in the affidavit included: (1) on August 29, 2017, "PSP Troopers walked by room 219 and based on their training and experience identified the smell of marijuana emanating from the door to that room." *Id.* ¶ 7; (2) troopers noticed that the outside window to that hotel room was open and believed the occupant was attempting to air out the smell of marijuana, *id.*; (3) a trooper encountered Williams in the hotel lobby and smelled marijuana on his person and learned that Williams was staying in room 219, *id.* ¶ 8; (4) Williams renewed his room for one more day, which was consistent with Tetrault's experience that persons involved in illicit activities did not have a set period to stay at a hotel, *id.* ¶ 9; (5) Tetrault had (a) participated in a controlled delivery and anticipatory search warrant at a home in Carnegie, Pennsylvania, on April 13, 2017, in which 6 kilograms of cocaine and $78,500 were recovered and one of the individuals interviewed during that operation overheard "Q" discuss a possible delivery to that residence, and (b) was "aware through numerous narcotics investigations that Williams goes by the street name of 'Q,'" *id.* ¶ 11; and (6) Tetrault was aware of drug-related arrests of Williams in Arizona in 2012 and 2014, *id.* ¶ 12.

(2:17-cr-00246-JFC-1, ECF Nos. 332, p. 3).[2]

---

may consider "matters of public record" in determining whether a pleading has stated a claim (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004))); *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (defining public record to include criminal case dispositions, such as convictions or mistrials.)

[2] Judge Conti, after conducting a *Franks* hearing *(i.e., Franks v. Delaware*, 438 U.S. 154, 171 (1978)), (over the course of three days), found the troopers' testimony about smelling marijuana emanating from room 219 truthful. (*Id.* at 4-5).

In this action, which was filed in July 2019, Williams demands a $25 million payment from Defendants ESA Management LLC, Cheryl Safar, and Danielle Maisel (collectively "Defendants") because of the role he believes they played in assisting law enforcement in his apprehension at the Extended Stay America Hotel in Monroeville, Pennsylvania. (ECF Nos. 1 and 23). He takes issue with the hotel providing his confidential information – i.e., his "name, room number, check in time, and check out time" – to the police on August 28, 2017. (*Id.* at 4-5). Williams brings the following claims: Count 1 – Fourth Amendment right to unreasonable search and seizure; Count 2 – negligent hiring and supervision; Count 3 – conspiracy; Count 4 – unlawful business and deception practices; and Count 5 – willful misconduct "8550." (*Id.* at 4-7).[3] In February 2020, Defendants filed a motion to dismiss. (ECF No. 28). On April 30, 2020, Chief Magistrate Judge Cynthia Reed Eddy granted Williams' motion to stay and ordered that the case be stayed and administratively closed pending resolution of Williams' criminal charges. (ECF Nos. 32 and 33). Approximately two years later, on February 15, 2024, Magistrate Judge Eddy extended the stay. (ECF No. 36). On January 14, 2025, the Court lifted the stay and ordered the parties to file supplemental briefing on Defendants' motion to dismiss. (ECF No. 41). For the following reasons, the Court will grant Defendants' motion.

---

[3] Williams has amended his complaint twice (ECF Nos. 5, 17, and 23) with the operative complaint being that docketed at ECF No. 23. On February 24, 2025, the Court denied Williams' motion to file a third amended complaint as it found his proposed causes of action meritless. (ECF No. 50). In so doing, it noted its agreement with Defendants that "Plaintiff's continuing effort to shift responsibility to others – law enforcement, his own legal counsel, or hotel employees acting in good faith – is not only a waste of judicial resources but also an affront to the integrity of the legal system." (ECF No. 50, p. 3 (citation omitted)).

## I.   STANDARD OF REVIEW

### A. Rule 12(b)(6)

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### B. *Pro se* pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). In practice, this liberal pleading standard works as "an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring). If a court can reasonably read the pleadings to state a valid claim on which a plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969). "*Pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

In keeping with its duty to "construe *pro se* complaints liberally ... [the Court] will consider" additional facts included in Williams' filings that came after the amended complaint to the extent they are consistent with the allegations in the amended complaint. *Bush v. City of Philadelphia*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005).

## II.   FACTUAL BACKGROUND

Williams contends that an unnamed receptionist told him while he was checking in to the Extended Stay America Hotel in Monroeville, Pennsylvania on August 24, 2017, that "all information [(i.e., name, room number, check)] concerning [a] guest who's staying at the hotel [would be] kept confidential and would not be disclose[d] to any third parties." (ECF No. 22-1, p. 1); (ECF No. 23, p. 3). According to Williams, on August 28, 2017, a police officer approached the hotel receptionist, Defendant Cheryl Safar ("Safar"), with a photograph of him

bearing his name, and asked her to confirm that Williams was staying at the hotel. (ECF No. 22-1, p-1); (ECF No. 22-2, p. 2); (ECF No. 23, p. 3). Allegedly, Safar confirmed that Williams was staying at the hotel, and she also gave the officer a copy of Williams' folio receipt. Later that day, she texted the officer to tell him that Williams had returned to the hotel. (ECF No. 22-2, p. 3). The next day, Defendant Danielle Maisel ("Maisel"), a receptionist at the hotel, provided a copy of Williams' folio receipt to the police. (ECF No. 22-1, p. 1); (ECF No 23, pp. 3-4). Williams' contends that Defendants' cooperation with an ongoing law enforcement investigation resulted in his "personal information being disclosed," which ultimately led to his arrest. (ECF No. 23, p. 4).

### III. ANALYSIS

Williams asserts two federal claims under § 1983, a violation of his Fourth Amendment rights through the disclosure of information regarding his hotel stay to law enforcement officials, and a claim that Defendants conspired with law enforcement officers to violate his constitutional rights. He also brings state law claims of negligent hiring and supervision, fraud, and willful misconduct. (ECF No. 23). As will be explained below, the Court holds that Williams has failed to state a federal claim for relief. It declines to exercise supplemental jurisdiction over his state law claims.

#### A. The § 1983 claims will be dismissed.

The vehicle by which federal constitutional claims may be brought in federal court is § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted). Williams has failed to state a claim under § 1983.

First, it does not appear that any of the Defendants are subject to liability under § 1983. The "color of state law element is a threshold issue," and thus there is no liability under § 1983 if the defendants were not acting under color of state law. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). "Action under color of state law 'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey v. Plains Twp. Police Dept.*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)). Williams named as defendants the parent company of a private hotel chain, ESA Management LLC, and two receptionists, Safar and Maisel, who worked at the Extended Stay America Hotel in Monroeville, Pennsylvania. Defendants are private actors, not state actors.

The Supreme Court has established several approaches to the question of when a private person acts under color of state law. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001). The United States Court of Appeals for the Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) 'whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state'; (2) 'whether the private party has acted with the help of or in concert with state officials'; and (3) whether 'the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.'" *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)). "The inquiry is fact-specific," *Groman*, 47 F.3d at 638, and "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself.'" *Brentwood Acad. v*, 531 U.S. at 295 (quoting *Jackson v. Metropolitan Edison*

7

*Co.*, 419 U.S. 345, 351 (1974)). "In other words, the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

Williams' complaint lacks sufficient factual allegations from which a reasonable person could infer that Defendants were state actors or engaged in state action. None of the alleged conduct of Defendants can be fairly viewed as state action. Williams has failed to allege facts to plausibly demonstrate that Defendants acted with the help of or in concert with state officials. His assertions of conspiracy are factually unsupported and fanciful.[4] Safar and Maisel are not state actors merely because they provided information to police during a criminal investigation. Nothing Williams has come forth with adequately demonstrates that Defendants conspired with law enforcement officers to violate Williams' rights.

Second, Williams has failed to plead a violation of a right secured by the Constitution and laws of the United States. He alleges a violation of his Fourth Amendment rights through the disclosure of information regarding his hotel stay to law enforcement officials, and that Defendants conspired with law enforcement officers to violate his constitutional rights. Neither claim is a viable ground for relief under § 1983.

To establish a violation of rights under the Fourth Amendment, a person must have a "constitutionally protected reasonable expectation of privacy" in the area searched or the items

---

[4] An otherwise private actor may act under color of state law when engaged in a conspiracy with a state official. *See Dennis v. Sparks*, 449 U.S. 24, 28-29 (1980). But "[a] conspiracy is not parallel conduct by different parties; it must embody, at its heart, an agreement between the defendants and state officials—a meeting of the minds-to violate the plaintiffs rights." *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 645 (E.D. Pa. 2014) (internal citations and quotations omitted).

seized. *California v. Ciraolo*, 476 U.S. 207, 211 (1986). Williams alleges that he had a protected privacy interest in information regarding his hotel stay (i.e., his name, room number, check) under the Fourth Amendment.[5] Defendants contend that Williams, as a hotel guest, had no privacy interest in the hotel's records. (ECF No. 29, p. 7). While the Third Circuit has not specifically addressed this issue, other courts of appeals have held that a hotel guest does not have any privacy interest in a hotel's records. *See United States v. Cormier*, 220 F.3d 1103, 1108 (9th Cir. 2000) (holding a guest has no reasonable expectation of privacy in records held by the motel where he stayed); *United States v. Willis*, 759 F.2d 1486, 1498 (11th Cir. 1985) (holding a guest has no standing to challenge the use of guest registration records by the police); *United States v. Sesay*, 937 F.3d 1146 (8th Cir. 2019), *cert. denied*, 140 S. Ct. 1242 (2020)

---

[5] In direct defiance of the Court's Order (ECF No. 50) prohibiting amendment, Williams set forth new facts and a new § 1983 cause of action in his response (ECF No. 52). As to new facts, Williams' claims he read and relied on an unidentified online privacy policy. As to a new constitutional claim, he alleges that Defendants admitted law enforcement into his hotel room without a warrant. (*Id.*). The Court will not consider these new facts and claim. However, it notes that the new facts do not alter the Court's analysis of Williams' Fourth Amendment claim. It would further note that Williams' new claim is frivolous and devoid of any factual basis; it is yet another futile attempt to manufacture a claim. Significantly, none of the motions to suppress filed in Williams' criminal case raised an argument that Defendants allowed law enforcement officials to enter his hotel room. *See United States v. Williams*, 2:17-cr-00246-JFC (ECF Nos. 56, 57, 171). As set forth in Judge Conti's opinion on Williams' suppression motions, while law enforcement officers obtained multiple key cards to the hotel during their investigation, no testimony or evidence was adduced that they used them to enter Williams' room. Instead, on August 29, 2017, they obtained a search warrant for Williams' room for evidence of possession of a controlled substance, e.g., marijuana. After executing the warrant and discovering $192,000.00 and seventeen kilograms of cocaine inside the room, law enforcement officers obtained a second search warrant for the room. *See United States v. Williams*, 2:17-cr-00246-JFC (ECF No. 79). This same evidence was adduced during Williams' jury trial. *See United States v. Williams*, 2:17-cr-00246-JFC (ECF No. 322). Williams' direct appeal is currently pending in the United States Court of Appeals for the Third Circuit at No. 24-2527. Notably, in his Brief for Appellant, Williams' lays out the facts from his jury trial, and he never claims that Defendants admitted law enforcement into his room without a warrant. He acknowledges that while law enforcement officers were given a key to room 219, they did not enter until they obtained a search warrant. *See* United States Court of Appeals for the Third Circuit, Court of Appeals Docket #: 24-2527 (Document 24).

(holding that the defendant did not have reasonable expectation of privacy in his identification card that he provided when registering as a guest at a motel, and therefore police officers did not violate his Fourth Amendment rights by demanding to inspect the motel registry). The Court concurs with these courts of appeal. It holds that the privacy interest at stake was the hotel's, and that a hotel guest, like Williams, has no legitimate expectation of privacy in information voluntarily provided to the hotel or in the hotel's guest registry.[6] What a guest gives up voluntarily the hotel can give away voluntarily without injury to any interest – Fourth Amendment or otherwise – that the guest might subjectively believe he still has in that information. Notably, guest registration records do not contain any highly personal information – they contain a name, room number, and method of payment. The information in the records is available to any hotel employee, and a guest cannot demonstrate a reasonable expectation that the information would remain private. Consequently, the Court finds that Williams has failed to state a viable Fourth Amendment claim.

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of [his] constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). More specifically, a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the

---

[6] It's the Court's understanding that evidence introduced at Williams' criminal trial revealed that the manager of the hotel, via email and fax, received a law enforcement subpoena in August 2017 for records related to Williams, who was staying in the hotel. The manager provided a folio for Williams, which contained guest information, date of check-in, room number, payment method, nights stayed, and the charges. Apparently, Maisel provided law enforcement with a hotel key in accordance with the subpoena. *See United States v. Williams*, 2:17-cr-00246-JFC (ECF No. 322). This evidence further undermines Williams' Fourth Amendment claim.

conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983). Williams' amended complaint does not allege a plausible conspiracy claim.

"[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citation omitted). "[A] bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556. To state a claim for conspiracy, a plaintiff must do more than recite talismanic phrases like "conspire" and "act in concert." *See Jutrowski*, 904 F.3d at 295 (explaining that, to state a civil conspiracy claim, a plaintiff must demonstrate that defendants "somehow reached an understanding to deny [the plaintiff] his rights" (alteration in original)). Williams' allegations of conspiracy are grounded in conclusory statements that can only be described as "threadbare recitals of the elements" of the cause of action, detailing his suspicions of foul motive. *Iqbal*, 556 U.S. at 678. His allegations do not adequately allege facts and circumstances showing that Defendants conspired or reached any agreement with each other and then with law enforcement officials to deprive Williams of his constitutional rights. Williams has not alleged with any specificity the contours of an illegal agreement against him by identifying the specific parties to the agreement, the object of the agreement, or when this agreement was made. He has not alleged any factual basis on which one could infer a conspiracy; there are no averments of communications, consultation, or command, and there are no facts pled as to the role each defendant played in carrying out a conspiracy. Accordingly, the Court holds that Williams has not alleged a plausible basis for a conspiracy claim.

The Court further holds that amendment would be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility); *see also* 3 James Wm. Moore et al., *Moore's Federal Practice* ¶ 15.15 (3d ed. 2024) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss."). Not only has Williams failed to come forth with any meritorious federal claims, he has already amended his complaint on multiple occasions to no avail, and there are no other facts that he can plead in support of his causes of action. Hence, all of Williams' federal claims will be dismissed with prejudice.

### B. The Court will not exercise jurisdiction over the state law claims.

A district court "may decline to exercise supplemental jurisdiction" over state law claims if it "has dismissed all claims over which it has original jurisdiction[,]" 28 U.S.C. § 1367(c)(3), unless considerations of judicial economy, convenience, or fairness to the parties provide an affirmative justification for exercising supplemental jurisdiction. *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000). The Court finds that no factors or extraordinary circumstances exist that would warrant it exercising supplemental jurisdiction over Williams' state law claims (i.e., negligent hiring and supervision, fraud, and willful misconduct). It will dismiss such claims without prejudice for Williams to assert them in state court.

### IV. CONCLUSION

For these reasons, the Court will grant Defendants' motion to dismiss by Order of Court to follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

__7/7/25_____
Dated